FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| **SANAZ LIMOUEE**<br>1730 Greenwich Avenue<br>Winter Park, Florida 32789<br><br>**Plaintiff,**<br><br>v.<br><br>**ORIONCKB, LLC**<br>Serve: Resident Agent<br>Scott Briggs<br>266 Main Street, Unit 10<br>Medfield, Massachusetts 02052<br><br>**Defendant.** | Civil Action No. 1:16-cv-278<br>**JURY TRIAL REQUESTED**<br>(CMH/TCB) |

## COMPLAINT

**COMES NOW**, Plaintiff Sanaz Limouee, by and through undersigned counsel, and by way of Complaint against Defendant OrionCKB, LLC, hereby alleges as follows:

### INTRODUCTION

1.  This action is governed by California law and includes the following claims: (i) breach of contract; (ii) breach of the implied covenant of good faith and fair dealing; (iii) implied contract/quantum meruit; (iv) retaliation pursuant to California Labor Section 98.6(a); and (v) unpaid wages pursuant to California Labor Code Section 2751 against Defendant OrionCKB, LLC for its intentional failure to honor its contractual obligations arising from Plaintiff Sanaz Limouee and Defendant OrionCKB, LLC's (jointly the "Parties") employment contract (hereinafter the "employment contract" or the "2014 Compensation Plan").

1

## **PARTIES**

2. Plaintiff Sanaz Limouee ("Plaintiff") is a citizen of the United States, and was previously an employee of Defendant OrionCKB, LLC (hereinafter "OrionCKB" or the "Company").

3. Plaintiff Limouee was directly employed by Defendant OrionCKB from January of 2014 until November 19, 2015, when she was terminated out of retaliation for seeking unpaid commissions.

4. Plaintiff Limouee was at all times relevant to the factual allegations of this Complaint a resident of Great Falls, Virginia who telecommuted to work for Defendant OrionCKB. While Plaintiff Limouee was employed by Defendant OrionCKB, she worked out of her home located at 509-B Arnon Meadow Road, Great Falls, Virginia 22066. During the duration of her employment with Defendant OrionCKB, Virginia taxes were withheld from her salary.

5. During all times relevant herein, Plaintiff Limouee performed as Defendant OrionCKB's Chief Revenue Officer ("CRO").

6. Upon information and belief, Defendant OrionCKB is a limited liability company registered to do business in the State of Nevada, which maintains its principal place of business at 266 Main Street, Building 1, Suite 10, Medfield, Massachusetts 02052.

7. Defendant OrionCKB advertises itself as a leading agency for advertising on Facebook, Instagram, and PPC.

8. Plaintiff Limouee routinely and consistently sold advertisement services on behalf of third-party Facebook, Inc. to the vast majority of her clients. Moreover, Plaintiff Limouee realized a substantial portion of her commissions from selling advertisement services to her

clients on behalf of third-party Facebook, Inc. ("Facebook"). Facebook's principal place of business is located at 1601 Willow Road, Menlo Park, California 94025.

9. The employment contract entered into by Plaintiff Limouee and Defendant OrionCKB expressly states it shall be interpreted in accordance with the laws of the State of California. The damages suffered by Plaintiff Limouee were realized while she was a resident of Fairfax County, Virginia.

## JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction over the claims stated herein pursuant to 28 U.S.C. §1332 because Plaintiff Limouee and Defendant OrionCKB are citizens and residents of different states and the amount in dispute exceeds $75,000.

11. This Court has personal jurisdiction over the claims stated herein as the acts and omissions leading to Plaintiff Limouee's injuries were committed by Defendant OrionCKB in the Commonwealth of Virginia.

12. This Court has personal jurisdiction over Defendant OrionCKB pursuant to Virginia's long-arm statute, Va. Code Ann. § 8.01-328.1, as Defendant OrionCKB transacted business in the Commonwealth of Virginia by virtue of its employment of Plaintiff Limouee and the work she was directed to perform on behalf of Defendant OrionCKB within the Commonwealth of Virginia.

13. At all times relevant herein, Defendant OrionCKB facilitated Plaintiff Limouee's ability to perform her work from the Commonwealth of Virginia. Defendant OrionCKB recruited and hired Plaintiff Limouee when she was a resident of the Commonwealth of Virginia. Carlos Cashman, President of OrionCKB, personally negotiated an offer letter and other employment agreements with Plaintiff Limouee with the mutual understanding that she would work from her

residence located in Fairfax County, Virginia. Defendant OrionCKB had full knowledge that Plaintiff Limouee would perform her duties from her Fairfax County, Virginia residence, Plaintiff Limouee in fact did so, and Plaintiff Limouee's claim of Defendant OrionCKB's failure to pay commissions was related to Defendant OrionCKB's employment of Plaintiff Limouee.

14. Defendant OrionCKB's officers routinely directed Plaintiff Limouee's performance through calls and emails while she performed her job duties in the Commonwealth of Virginia.

15. On or about November 19, 2015, Plaintiff Limouee was notified of her termination via email while she was a resident of the Commonwealth of Virginia. On or about November 23, 2015, Plaintiff Limouee received a letter of termination at her home office located in Fairfax County, Virginia.

16. Venue is properly laid in the United States District Court for the Eastern District of Virginia pursuant to 28 U.S.C. §1391 because a substantial part of the acts or occurrences giving rise to this action occurred while Plaintiff Limouee was a resident of the Commonwealth of Virginia.

## FACTUAL BACKGROUND

17. Plaintiff Limouee began her employment with Defendant OrionCKB in or around January of 2014. Plaintiff Limouee was hired to contribute her abilities to effectively manage a sales team, increase sales, and gain market share from competitors.

18. Plaintiff Limouee is a leading sales professional in the advertising sector that focuses on the identification, qualification, and capture of new business.

19. The Chief Executive Officer ("CEO") of Defendant OrionCKB, Mr. Cashman, recruited Plaintiff Limouee as he knew she would have an immediate impact on the Company's

reputation and bottom-line. In recognition of her experience and industry reputation, Defendant OrionCKB offered her the executive position of CRO with a highly rewarding incentive compensation plan.

20. At the time of her hire, Plaintiff Limouee and Defendant OrionCKB entered into a legally enforceable 2014 compensation contract plan ("2014 Compensation Plan"). This compensation structure expressly includes, *inter alia*, the following terms and conditions:

    a. "Beginning in 2015 your base salary and compensation will be fixed at $120,000 per annum less payroll deductions and all required withholdings, with a commission bonus structure as follows: (i) First 12 months – 10%; (ii) Second 12 months – 5%; and Third 12 months and beyond – 3%;

    b. For existing accounts given to you by the Company when you start or at any time thereafter (brought in through other means than your sales efforts) which you then manage, the commission rates will be as follows: (i) First 12 months – 10%; (ii) Second 12 months – 5%; and Third twelve months and beyond – 3%.

    c. This letter, together with the CIIAA, forms the complete and exclusive statement of your employment agreement with the Company. It supersedes any other agreement or promises made to you by anyone, whether oral or written, and it can only be modified in a written agreement signed by [Carlos Cashman]."[1]

21. At no time during Plaintiff Limouee's employment did the Parties enter into a superseding compensation agreement. As a result, the 2014 Compensation Plan governs Plaintiff Limouee's commissionable earnings for both the 2014 and 2015 fiscal years.

---

[1] *See* Attachment A, Sanaz Limouee and OrionCKB, LLC 2014 Compensation Plan.

22. When Plaintiff Limouee began her employment in or around January of 2014, she entrusted Defendant OrionCKB's co-founders by electing to not take a salary for the first six (6) months and to only receive compensation via commission.

23. During Plaintiff Limouee's two (2) year tenure with Defendant OrionCKB, she consistently contributed to the success and growth of the young start-up Company by successfully securing and delivering highly profitable advertising sales to a vast array of customers, which incidentally led to increased market share and the simultaneous growth of the Company.

24. During the course of Plaintiff Limouee's employment, Defendant OrionCKB routinely and consistently directed her to broker advertisement campaigns between California-based company Facebook and other various clients. These transactions resulted in Facebook rendering services for her various clients from its California-based headquarters. Indeed, many of the transactions brokered by Plaintiff Limouee acting as an agent of Defendant OrionCKB were for California-based Facebook to provide advertisement services for other California-based companies. These California brokered transactions were between Facebook and some of the following California-based companies:

    a. Active Mind Technology, Inc., with its principal place of business located at 77 Geary Street, 5th Floor, San Francisco, California 94108;

    b. Bridgepoint Education, Inc., with its principal place of business located at 13500 Evening Creek Drive North, San Diego, California 92128;

    c. Cognutria Foods, Inc., with its principal place of business located at 8 Esquire Court, Novato, California 94949; and

    d.  Dolls Kill, Inc., with its principal place of business located at 351 Ninth Street, Suite 301B, San Francisco, California 94103.

25.  Facebook expressly identifies its principal place of business via its Securities and Exchange Commission ("SEC") filings[2] as, 1601 Willow Road, Menlo Park, California 94025. Facebook also acknowledges this location as its headquarters and main location by which it renders services.

26.  Plaintiff Limouee was expressly directed by Defendant OrionCKB to sell Facebook advertisement campaign services to the vast majority of her clients. In fact, under the direction of Defendant OrionCKB, Plaintiff Limouee succeeded at brokering these transactions to the vast majority of her clients.

27.  In 2014, Plaintiff Limouee managed a 3.25 multiplier in growth in Facebook advertising as the sole contributor; she had quadrupled her average client size; and had a 250% percent increase in ad spend from Defendant OrionCKB's most lucrative clients significantly benefiting the Company's bottom-line.

28.  As Plaintiff Limouee's team grew, her management responsibilities simultaneously increased. Plaintiff Limouee exceeded expectations as the leader of her team through her ambitious sales efforts, diligence, and technical know-how, which she especially utilized on Defendant OrionCKB's most important accounts. Plaintiff Limouee handed her team deals that she closed in order launch the team in the right direction, however, she was the only successful member of the team who could consistently execute deals.

29.  Plaintiff Limouee's individual success and ability to successfully lead her team led to Defendant OrionCKB exponentially gaining market share of high-yielding ad spend

---

[2] *See* United States Securities and Exchange Commission, October 17, 2014 Form D, *available at:* https://www.sec.gov/Archives/edgar/data/1326801/000116840414000008/xslFormDX01/primary_doc.xml.

clients. Defendant OrionCKB's acknowledgement of Plaintiff Limouee's achievements is evidenced by an email from Mr. Cashman dated on or about September 13, 2015 in which he stated "...you do an extraordinary job handling your clients and making them happy and being involved – you get into the weeds. Not everyone does." Unfortunately, Mr. Cashman's opinion of Plaintiff Limouee would unjustly change when she reasonably requested her unpaid commissions.

30. Throughout 2015, Plaintiff Limouee and Defendant OrionCKB engaged in negotiations concerning the modification of Plaintiff Limouee's existing 2014 Compensation Plan, but these efforts failed to lead to a new 2015 Compensation Plan that would supersede her 2014 Compensation Plan and incidentally govern her commissionable earnings. As a result of the failure to reach an agreement, Plaintiff Limouee's 2014 Compensation Plan governs her commissionable earnings for both 2014 and 2015.

31. On or about November 9, 2015, Mr. Cashman met with Plaintiff Limouee at a Regus office in New York City to inform her that her employment with Defendant OrionCKB would end on December 31, 2015 and that she would be entitled to commissionable earnings through December 31, 2015. During this meeting, Plaintiff Limouee and Mr. Cashman also discussed her unpaid commissions and stock redemption. In fact, Mr. Cashman assured Plaintiff Limouee that he would work to see that she would be properly compensated and that the Company was anticipating a quick and amicable separation.

32. On or about November 10, 2015, Plaintiff Limouee sent an email to Mr. Cashman following up on their conversation from the day before. In this email, Plaintiff Limouee reiterated her request for the appropriate calculations of her commissionable earnings based upon

the existing and governing 2014 Compensation Plan as no new 2015 Compensation Plan had been mutually agreed to and properly memorialized.

33. In an email from Mr. Cashman to Plaintiff Limouee dated on or about November 19, 2015, Mr. Cashman reneged on their existing employment agreement and informed Plaintiff Limouee that she was terminated effective immediately. Defendant OrionCKB's expedited termination was done in retaliation to Plaintiff Limouee reasonably requesting her unpaid commissions.

34. Plaintiff Limouee requested that Mr. Cashman properly compensate her for unpaid commissions for Q1 and Q2 of fiscal year 2015 due to her not being paid in full for both quarters. Plaintiff Limouee also requested that Mr. Cashman properly compensate her for commissions she earned in Q3 and Q4 of fiscal year 2015 as she had not respectively received any compensation for both of these quarters.

35. Based on the compensation structure set forth in Plaintiff Limouee's employment contract, Defendant OrionCKB owes her a minimum of $309,095.37. This figure is notwithstanding other various agreements she secured but unfortunately went unacknowledged by Defendant OrionCKB. Thus, the true figure she is owed is considerably higher than $309,095.37.

36. Defendant OrionCKB also failed to properly compensate Plaintiff Limouee for the commissions she rightfully earned in November of 2015. Moreover, Defendant OrionCKB also failed to make lawful taxable deductions from Plaintiff Limouee's wages.

37. Defendant OrionCKB has intentionally kept Plaintiff Limouee from fully benefitting from the sales revenue, ultimately, trying to unilaterally place her on a new

compensation plan once it was determined that her commission would far exceed the amount she would receive if she had a payment structure predominantly based on salary.

## COUNT ONE
### (Breach of Contract)

38. Plaintiff Limouee reasserts the allegations contained in Paragraphs 1 through 37 as if fully set forth herein.

39. Plaintiff Limouee and Defendant OrionCKB entered into a legally enforceable employment contract, the 2014 Compensation Plan. The compensation structure set forth in the 2014 Compensation Plan includes the following terms:

    a. "Beginning in 2015 your base salary and compensation will be fixed at $120,000 per annum less payroll deductions and all required withholdings, with a commission bonus structure as follows: (i) First 12 months – 10%; (ii) Second 12 months – 5%; and Third 12 months and beyond – 3%;

    b. For existing accounts given to you by the Company when you start or at any time thereafter (brought in through other means than your sales efforts) which you then manage, the commission rates will be as follows: (i) First 12 months – 10%; (ii) Second 12 months – 5%; and Third twelve months and beyond – 3%.

    c. This letter, together with the CIIAA, forms the complete and exclusive statement of your employment agreement with the Company. It supersedes any other agreement or promises made to you by anyone, whether oral or written, and it can only be modified in a written agreement signed by [Carlos Cashman]."[3]

---

[3] *See* Attachment A, Sanaz Limouee and OrionCKB, LLC 2014 Compensation Plan.

40. Plaintiff Limouee performed her obligations under the contract and in fact exceeded all expectations and targets by selling and brokering various advertisement transactions for Defendant OrionCKB.

41. Defendant OrionCKB breached this contract by failing to honor its obligations by refusing to pay Plaintiff Limouee commissions she rightfully earned pursuant to the terms set forth in the contract (2014 Compensation Plan) that was in fact drafted by Defendant OrionCKB.

42. As a result of Defendant OrionCKB's breach of contract, Plaintiff Limouee has suffered and continues to suffer significant damages.

## COUNT TWO
### (Breach of the Implied Covenant of Good Faith and Fair Dealing)

43. Plaintiff Limouee reasserts the allegations contained in Paragraphs 1 through 37 as if fully set forth herein.

44. Acting as an agent of Defendant OrionCKB, Mr. Cashman intentionally acted in bad faith by employing various schemes and making false allegations to modify Plaintiff Limouee's existing 2014 Compensation Plan.

45. In multiple emails Mr. Cashman continued to make false statements about the calculation of Plaintiff Limouee's commissionable earnings. Specifically, Mr. Cashman misrepresented that a new 2015 Compensation Plan was executed by Plaintiff Limouee; however, he knew that there was never a revised 2015 Compensation Plan signed by the Parties. In an email dated on or about November 10, 2015, Mr. Cashman stated, "Recall, you're 2015 and beyond plan was not commission based, but was a very high salary and bonus which was dependent on hitting targets and company performance."

46. Mr. Cashman failed to acknowledge, however, that Plaintiff Limouee never executed on any proposed 2015 Compensation Plan.

47. Defendant OrionCKB has acted in bad faith by failing to disclose its methodology in failing to pay Plaintiff Limouee her rightful commissions and failing to pay her pursuant to her Offer Letter and compensation structure set forth in the 2014 Compensation Plan.

48. As a result of Defendant OrionCKB's breach of the implied covenant of good faith and fair dealing, Plaintiff Limouee has suffered and continues to suffer significant damages.

## COUNT THREE
### (Implied Contract/Quantum Meruit)

49. Plaintiff Limouee reasserts the allegations contained in Paragraphs 1 through 37 as if fully set forth herein.

50. Notwithstanding the existence of the 2014 Compensation Plan, Plaintiff Limouee may recover under quantum meruit.

51. Plaintiff Limouee rendered services to Defendant OrionCKB in the form of sales expertise and management skills that led to Defendant OrionCKB securing multiple advertising sales agreements.

52. The value of the services rendered by Plaintiff Limouee to Defendant OrionCKB are evidenced by her high sales and profound impact.

53. Defendant OrionCKB was the recipient of Plaintiff Limouee's services.

54. Defendant OrionCKB requested Plaintiff Limouee to undertake sales and management roles and subsequently accepted the revenues generated by her customer relationships.

55. The circumstances establish that Plaintiff Limouee rendered such services to Defendant OrionCKB in reliance on Defendant OrionCKB's representations that she would be properly compensated pursuant to her 2014 Compensation Plan that was mutually executed by the Parties.

56. Plaintiff Limouee rendered services for Defendant OrionCKB and was damaged by way of Defendant OrionCKB's failure to compensate Plaintiff Limouee for such services.

### COUNT FOUR
### (Retaliation)

57. Plaintiff Limouee reasserts the allegations contained in Paragraphs 1 through 37 as if fully set forth herein.

58. California Labor Section 98.6(a) protects plaintiffs by stating that "[a] person shall not discharge an employee or in any manner discriminate, *retaliate*, or take any adverse action against any employee or applicant for employment because the employee or applicant engaged in any conduct delineated in this chapter...or because the employee or applicant for employment has filed a bona fide complaint or claim or instituted or caused to be instituted any proceeding under or relating to his or her rights that are under the jurisdiction of the Labor Commissioner, made a written or oral *complaint that he or she is owed unpaid wages,* or because the employee has initiated any action or notice pursuant to Section 2699, or has testified or is about to testify in a proceeding pursuant to that section, or because of the exercise by the employee or applicant for employment on behalf of himself, herself, or others of any rights afforded him or her." LABOR AND EMPLOYMENT—EMPLOYER LIABILITY—CIVIL ACTIONS AND PROCEEDINGS, 2015 Cal. Legis. Serv. Ch. 792 (A.B. 1509) (WEST).

59. On November 10, 2015, Plaintiff Limouee sent an email to Mr. Cashman reasonably requesting she be paid her unpaid commissions pursuant to her original 2014 Compensation Plan for transactions she brokered between her clients and third-party Facebook, which, has its principal place of business located at 1601 Willow Road, Menlo Park, California 94025. Many of the clients that received advertisement services from third-party Facebook were companies that like Facebook have their principal place of business located in California, these

included but are not limited to: (a) Active Mind Technology, Inc.; (b) Bridgepoint Education, Inc.; (c) Cognutria Foods, Inc.; and (d) Dolls Kill, Inc.

60. On November 19, 2015, Mr. Cashman's email to Plaintiff Limouee states that she was being terminated effective immediately because she requested payment pursuant to her 2014 Compensation Plan. Nonetheless, Plaintiff Limouee received a letter of termination stating that November 23, 2015 was her last day of employment.

61. As a result of Plaintiff Limouee requesting her unpaid commissions from Defendant OrionCKB for transactions she brokered for services to be rendered in the State of California, she was retailed against by way of termination in direct violation of California Labor Code Section 98.6(a).

62. Plaintiff Limouee reasserts the allegations contained in Paragraphs 1 through 37 as if fully set forth herein. California Labor Section 98.6(a) protects plaintiffs by stating that "[a] person shall not discharge an employee or in any manner discriminate, *retaliate*, or take any adverse action against any employee or applicant for employment because the employee or applicant engaged in any conduct delineated in this chapter...or because the employee or applicant for employment has filed a bona fide complaint or claim or instituted or caused to be instituted any proceeding under or relating to his or her rights that are under the jurisdiction of the Labor Commissioner, made a written or oral *complaint that he or she is owed unpaid wages,* or because the employee has initiated any action or notice pursuant to Section 2699, or has testified or is about to testify in a proceeding pursuant to that section, or because of the exercise by the employee or applicant for employment on behalf of himself, herself, or others of any

rights afforded him or her." LABOR AND EMPLOYMENT—EMPLOYER LIABILITY—CIVIL ACTIONS AND PROCEEDINGS, 2015 Cal. Legis. Serv. Ch. 792 (A.B. 1509) (WEST).

63. On November 10, 2015, Plaintiff Limouee sent an email to Mr. Cashman reasonably requesting she be paid her unpaid commissions pursuant to her original 2014 Compensation Plan for transactions she brokered between her clients and third-party Facebook, which, has its principal place of business located at 1601 Willow Road, Menlo Park, California 94025. Many of the clients that received advertisement services from third-party Facebook were companies that like Facebook have their principal place of business located in California, these included but are not limited to: (a) Active Mind Technology, Inc.; (b) Bridgepoint Education, Inc.; (c) Cognutria Foods, Inc.; and (d) Dolls Kill, Inc.

64. On November 19, 2015, Mr. Cashman's email to Plaintiff Limouee states that she was being terminated effective immediately because she requested payment pursuant to her 2014 Compensation Plan. Nonetheless, Plaintiff Limouee received a letter of termination stating that November 23, 2015 was her last day of employment. As a result of Plaintiff Limouee requesting her unpaid commissions from Defendant OrionCKB for transactions she brokered for services to be rendered in the State of California, she was retailed against by way of termination in direct violation of California Labor Code Section 98.6(a).

## COUNT FIVE
### (Unpaid Wages Under California Labor Code Section 2751)

65. Plaintiff Limouee reasserts the allegations contained in Paragraphs 1 through 37 as if fully set forth herein.

66. Plaintiff Limouee earned the vast majority of her commissions by way of brokering transactions for services to be rendered to her clients in the State of California by third-party Facebook, which has its principal place of business located at 1601 Willow Road,

Menlo Park, California, 94025. Many of the clients that received advertisement services from third-party Facebook were companies that like Facebook have their principal place of business located in California, these included but are not limited to: (a) Active Mind Technology, Inc.; (b) Bridgepoint Education, Inc.; (c) Cognutria Foods, Inc.; and (d) Dolls Kill, Inc.

67. California Labor Code Section 2751 requires that all commission contracts "...be in writing and...set forth the method by which the commissions shall be computed and paid." Cal. Lab. Code § 2751(a) (2016). Mr. Cashman's misrepresentations that Plaintiff Limouee endorsed a 2015 Compensation Plan when in fact she only endorsed the 2014 Compensation Plan are in direct contravention with California Labor Code Section 2751 that requires all commission contracts to be in writing.

68. Under California Labor Code Section 2751, employers must also "...give a signed copy of the contract to every employee who is a party [to the contract] and...obtain a signed receipt for the contract from each employee." *Id.* § 2751(b). Mr. Cashman was unable to provide a signed copy of the purported 2015 Compensation Plan he alleged she endorsed as she never physically and/or electronically endorsed that contract.

69. California Labor Code Section 2751 also provides that where the parties continue to work under the terms of an expired contract, "...the contract terms are presumed to remain in full force and effect until the contract is superseded or employment is terminated by either party." *Id.* As a result of Plaintiff Limouee never endorsing a new 2015 Compensation Plan during the 2015 fiscal year, the terms of the 2014 Compensation Plan are effective.

70. As an employee of Defendant OrionCKB, Plaintiff Limouee acted as an agent when she brokered transactions between California-based companies for services to be rendered in the State of California. As a result of Plaintiff Limouee earning the vast majority of her

commissionable earnings from transactions for services to be rendered in the State of California, Plaintiff Limouee should be compensated pursuant to the terms set forth in the 2014 Compensation Plan in accordance with California Labor Code Section 2751.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Limouee, respectfully requests that this Honorable Court:

a. Award Plaintiff Limouee damages for her unpaid commissions, including at least $309,095.37 in commissions on deals previously acknowledged by Defendant OrionCKB commissions on deals secured but not acknowledged by OrionCKB (in an amount to be determined), plus pre-judgment, and post-judgment interest.

b. Award Plaintiff Limouee all costs and expenses, including court costs, and reasonable attorneys' fees; and

c. Award any such further relief as this Honorable Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff Limouee respectfully requests a jury trial pursuant to Fed. R. Civ. P. 38.

Respectfully submitted,
SANAZ LIMOUEE
By Counsel

*[signature]*

Ryan C. Posey, Esq. (VSB No. 85109)
POSEY LEBOWITZ PLLC
3221 M Street, NW
Washington, DC 20007
(202) 524-0123 ext. 2
(202) 810-9009 (fax)
rposey@poseylebowitz.com

OF COUNSEL Natalie M. Koss, pro hac vice admission pending
POTOMAC LEGAL GROUP
1420 N St., N.W., Suite 102
Washington, DC 20005
(202) 643-9840 (telephone)
(202) 350-2654 (facsimile)
nkoss@potomaclegalgroup.com

Dated: March 11, 2016